Misty Perry Isaacson, CA SBN 193204
PAGTER AND PERRY ISAACSON, APLC
525 N. Cabrillo Park Drive, Ste 104
Santa Ana, CA 92701
(714) 541-6072 (tel)
(714) 541-6897 (fax)
Email:  misty@ppilawyers.com

John Ray Nelson, WSBA #16393
Foster Garvey P.C.
618 W. Riverside Avenue, Ste 300
Spokane, WA 99201
(509) 777-1604 (tel)
(509) 777-1616 (fax)
Email:  john.nelson@foster.com
Admitted Pro Hac Vice

*Attorneys for Defendant Foster Garvey P.C.*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>      Debtor. | Case No.: 8: l9-bk-13560-CB<br><br>Chapter 7<br><br>Adversary No.: 20-ap-01052-CB |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>      Plaintiff,<br><br>FOSTER GARVEY PC, as successor in-interest to FOSTER PEPPER, PLLC, a Washington professional corporation,<br><br>      Defendant. | NOTICE OF MOTION AND FOSTER GARVEY PC'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF AMANDA LEONARD IN SUPPORT THEREOF<br><br>**Hearing**<br>Date:  September 29, 2021<br>Time:  11:00 a.m.<br>Ctrm:  5C<br>Place:  Virtual via ZoomGov<br><br>Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC and then selecting "Judge Clarkson" from the tab on the left-hand side of the page. |

# TABLE OF CONTENTS

Page

I.# INTRODUCTION AND SUMMARY OF ARGUMENT .............................................2#

II.# UNDISPUTED MATERIAL FACTS ..........................................................................2#

III.# DISCUSSION ...............................................................................................................5#

    A.# Standards for Summary Judgment ....................................................................5#

    B.# Actual Fraudulent Transfers; "Recovery" Under 11 U.S.C. .............................6#

    C.# Foster Pepper Was Not An "Initial Transferee" Of The Subject
    Wires Under § 550(a) ........................................................................................7#

        1.# A party who lacks "dominion" over transferred funds –
        legal title and the right to use the money as it sees fit – is
        not an "initial transferee" under § 550(a). .............................................8#

        2.# Foster Pepper did not have dominion over funds held in
        trust account and paid to third parties. ...................................................9#

IV.# CONCLUSION.............................................................................................................10#

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................4, 5

*Bonded Fin. Servs., Inc. v. European American Bank*,
838 F.2d 890 (7th Cir.1988) ....................................................................................7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................5

*Ducker v. Fairmeadows II* (*In re Bridges Enters., Inc.*),
62 B.R. 300 (Bankr. S.D. Ohio 1986)..........................................................................7

*Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*,
33 B.R. 334 (Bankr. S.D.N.Y. 1983)............................................................................7

*In re Burns*,
322 F.3d 421 (6th Cir. 2003) .......................................................................................5

*In re Disciplinary Proceeding Against Trejo*,
163 Wn.2d 701, 185 P.3d 1160 (2008)........................................................................8

*In re Disciplinary Proceeding Against Young Suk Oh*,
176 Wn.2d 245, 290 P.3d 963 (2012)..........................................................................8

*In re Henninger*,
336 B.R. 733 (Bankr. N.D. Tex.).................................................................................7

*In re Incomnet*,
463 F.3d 1064 (9th Cir. 2006) .....................................................................................7

*In re Kingsley*,
518 F.3d 874 (11th Cir. 2008) .....................................................................................5

*In re Sawran*,
359 B.R. 348 (Bankr. S.D. Fla. 2007) ......................................................................5, 8

*Mano-Y & M, Ltd., Field*,
773 F.3d, 990 (9th Cir. 2014) ......................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................................5

*Matter of Coutee*,
984 F.2d 138 (5th Cir. 1993) .......................................................................................7

*Matter of Salvesen*,
    94 Wn.2d 73, 614 P.2d 1264 (1980) ................................................................8

*Matter of Walldesign, Inc.*,
    872 F.3d 954 (9th Cir. 2017) ......................................................................6

*Metsch v. First Alabama Bank of Mobile (In re Colombian Coffee Co.)*,
    59 B.R. 643 (Bankr. S.D. Fla. 1986), *aff'd* 75 B.R. 177 (S.D. Fla. 1987) ..............................8

*Neumeyer v. Crown Funding Corp.*,
    56 Cal.App.3d 178, 128 Cal. Rptr. 366 (1976) ..........................................5

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ...................................................................5

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*,
    68 B.R. 530 (Bankr. S.D. Fla. 1986) .......................................................8

*Salomon v. Nedlloyd, Inc.* (*In re Black & Geddes, Inc.*),
    59 B.R. 873 (Bankr. S.D.N.Y. 1986) .......................................................7

*State v. Kinneman*,
    120 Wn.App. 327, 84 P.3d 882 (2003) ...................................................8

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ...................................................................................4

## STATUTES

11 U.S.C. § 550 ..................................................................................1, 5, 6, 7, 9

Cal. Civ. Code § 3439.04(a) .....................................................................2, 3, 5

## OTHER AUTHORITIES

Bankruptcy Rule 9014 .....................................................................................4

Fed. R. Civ. P. 56 .........................................................................................4, 5

Washington RPC 1.15 ......................................................................................8

## NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that on September 29, 2021 at 11:30 a.m., or as soon

thereafter as the matter may be heard, before the Honorable Scott C. Clarkson, United States

Bankruptcy Judge, in Courtroom 5C, virtually via ZoomGov, Defendant Foster Garvey P.C.

("Foster Garvey" or "Defendant") will move for partial summary judgment against Plaintiff's

First, Second, Fourth and Fifth Claims for Relief (for "intentional fraudulent transfer")) as those

claims relate to: (a) the Debtor's alleged transfer of $909,818.65 to Defendant in July 2013, and

(b) the Debtor's alleged transfer of $500,000 to Defendant on May 23, 2014. There is no genuine

issue of fact material to these claims. The undisputed facts compel the conclusion that Defendant

was not a "transferee" of these funds under the California Uniform Fraudulent Conveyance Act

as a matter of law. Therefore, summary judgment against the claims is proper.

**PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to Federal

Rule of Civil Procedure 56, as incorporated by Fed. R. Bankr. P. 7056. The Motion is supported

by the attached Memorandum of Points and Authorities, the Declaration of John Nelson, and

such other argument as may be offered prior to or at the time of the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that a formal response to the Motion must be

filed with the Bankruptcy Court and served on counsel for Foster Garvey no later than twenty-

one (21) days before the scheduled hearing.

Date:  August 18, 2021                          PAGTER AND PERRY ISAACSON

                                                /s/ Misty Perry Isaacson

                                                _____
                                                Misty Perry Isaacson, Attorneys for
                                                Foster Garvey P.C.

Date:  August 18, 2021                          FOSTER GARVEY P.C.

                                                _____
                                                John R. Nelson, Attorneys for
                                                Foster Garvey P.C. (Admitted Pro Hac Vice)

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 1
FG:54359344.1

## FOSTER GARVEY PC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Foster Garvey, P.C. ("Foster Garvey") respectfully submits this Motion for partial summary judgment against Plaintiff's First, Second and Fourth claims for relief, alleging claims for "actual fraudulent transfers," as those claims relate to (a) all of the Debtor's alleged wire transfer of money in July 2013, and (b) a portion of the Debtor's alleged wire transfer of money on May 23, 2014.

Summary judgment is proper against these claims (to the extent sought by this motion) because the subject wire transfers were not made to pay for legal fees rendered to Global Baristas, as incorrectly alleged by the Complaint. Instead, the subject funds were wired to Foster Pepper's client trust account, were held by Foster Pepper in trust, and were paid to third parties or returned to the Debtor. Foster Pepper never had legal title or the right to "use and appropriate the subject funds as it saw fit" under Washington law. Therefore, applying the "dominion" test required by controlling Ninth Circuit precedent, Foster Pepper was not an "initial transferee" from who such funds can be recovered under 11 U.S.C. § 550(a)(1).

### II.   UNDISPUTED MATERIAL FACTS

In December 2012 Michael J. Avenatti ("Avenatti") hired Foster Pepper, PLLC ("Foster Pepper"), to represent Avenatti's company Global Baristas US, LLC ("GB"), in the "Tully's Coffee" bankruptcy case that was then pending in the Western District of Washington.[1] In January 2013 GB prevailed in a bankruptcy auction to purchase the Tully's Coffee assets for $9.125MM.[2] Foster Pepper represented GB in the bankruptcy proceedings and several other related cases over the next 18 months.

---

[1] *In re TC Global, Inc.,* Case No. 12-20253 (Hon. Karen A. Overstreet Presiding.) The Court has previously taken judicial notice of these proceedings under ER 201.

[2] *See* January 18, 2013 "*Order (1) Approving Sale of Substantially All Debtor's Assets Free and Clear of Liens and Encumbrances, (2) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (3) Approving Amount and Payment of Cure to Contracting Parties,*" Case 12-20253-MLB Doc. 573.

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 2
FG:54359344.1

1    Plaintiff sues Foster Garvey, P.C. ("Foster Garvey"), as the successor in interest to Foster

2   Pepper, and seeks to recover $1,770,818.85 that Foster Pepper allegedly received from the

3   debtor, Eagan Avenatti LLP ("EA") between June 25, 2013, and December 24, 2014. (Complaint,

4   Doc. 1, ¶ 30).[3] The Complaint claims that those payments were "intentional fraudulent transfers"

5   under California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04(a). Plaintiff bases

6   his claims on a conclusory allegation that "these transfers were made as compensation to Foster

7   Pepper for its role in acquiring and/or representing Tully's Coffee on behalf of Avenatti and/or

8   his affiliates." *Id.* Plaintiff does not aver any facts or identify any evidence to support that

9   allegation. Instead, he simply refers to a spreadsheet of alleged transfers between EA and Foster

10  Pepper's Client Trust Account, as reflected by selected EA bank statements, attached to the

11  Complaint as Ex. A.  *Id.*[4]

12    Ex. A to the Complaint identifies five transfers between EA and Foster Pepper in 2013.[5]

13  The first was a $7,000,000 wire transfer from EA's client trust account to Foster Pepper's

14  IOLTA Trust Account on June 25, 2013. The next four were wire transfers from Foster Pepper's

15  Trust Account *back* to EA, concluding on July 11, 2013. Plaintiff subtracts the amounts wired

16  into EA's account from the amounts wired out of EA's accounts and asserts, *ipse dixit*, that the

17  difference was "paid" to Foster Pepper as compensation for legal services rendered to GB. But

18  Plaintiff cites no evidence to prove that allegation. Instead, Plaintiff attaches EA's bank

19  statements to the Complaint, ignoring the fact that EA's bank statements prove *nothing* about the

---

[3] The Court has already granted summary judgment against Plaintiff's constructive fraudulent transfer claim regarding a payment made in 2016 for legal services that were indisputably rendered to EA. Doc. 53.

[4] For convenience, Ex. A to Plaintiff's Complaint is replicated at Appendix A to this motion.

[5] As set forth in Ex. A to the Complaint, the five transfers between EA and Foster Pepper in 2013 were made as follows, and "net" to $909,818.65 allegedly "paid" to Foster Pepper:

| Transfer # | Transfer Date | Amount | Transferor | Transferee |
|---|---|---|---|---|
| 1 | 6/25/2013 | $7,000,000.00 | EA Trust Account | FP Trust Account[5] |
| 2 | 7/1/2013 | ($2,429,893.13) | FP Trust Account | EA Trust Account |
| 3 | 7/5/2013 | ($1,500,000.00) | FP Trust Account | EA Trust Account |
| 4 | 7/9/2013 | ($350,000.00) | FP Trust Account | EA Trust Account |
| 5 | 7/11/13 | ($1,810,288.22) | FP Trust Account | EA Trust Account |

purpose of the wires from EA, the character in which funds were received and held by Foster

Pepper, the use of the funds, or the sources of the funds Foster Pepper returned to EA. In short,

they provide no support for the essential elements of plaintiff's claims.

### The 2013 Wire Transfers

Foster Pepper's IOLTA Trust Account records[6] prove that Foster Pepper received the

$7,000,000 wire from EA on June 25, 2013 *in trust*, held the funds in escrow, and paid out over

$6 million to third parties for the assets of the Tully's Coffee bankruptcy estate. They show that

Foster Pepper returned the balance to EA.  They also show that Foster Pepper was not paid *one*

*cent* of the $7,000,000 (for legal services or otherwise). Plaintiff's conclusory allegations to the

contrary are indisputably incorrect.

Document FG-EA0000614[7] is comprehensive list of the GB Trust Account transactions. It

shows that Foster Pepper did not retain *any* of the funds it held in trust for the Global Baristas

matter. *Id.* Instead, on July 1, 2013, Foster Pepper paid $6,070,106.87 of the original $7,000,000

wire it had received from EA to the Bush Strout & Kornfeld law firm (counsel for the seller, TC

Global), to close the purchase of Tully's Coffee for Global Baristas.[8] It also shows that there were

four *other* deposits into Foster Pepper's trust account for Global Baristas in July 2013,[9] and that

Foster Pepper sent *all* of those funds, together with the balance of the original $7,000,000, back to

EA.[10] Notably, each of the four transfers from Foster Pepper to EA in July 2013 took Foster

---

[6] The Trust Account records filed in support of this motion were provided to Plaintiff in response
to discovery requests on April 15, 2021.

[7] This document was created by FP's finance department in response to a request by Jack Cullen
for the Global Baristas trust balance as of July 1, 2013, in connection with an audit request
having an effective date of July 1, 2013.  Leonard Decl., par. 3, Ex. 1.

[8] See the Tully's Coffee "Closing Funds Flow," FG-EA0000469, and related documents FG-
EA0000462-468, Leonard Decl., Ex. 2.

[9] These four other transfers into the GB Trust Account were $1,500,000 from Goldman, Sachs
for the benefit of "Parrish Family Trust" on July 1, 2013 (FG-EA0000319-320 (credit
confirmation); $1,500,000 from Larry Spilcaufsky on July 5, 2013; $350,000 from Global
Baristas on July 9, 2013; and $1,810,288.22 from Yardam Knot, Inc. on July 11, 2013. Leonard
Dec., Ex. 1.

[10] See FG-EA0000285-86; FG-EA0000616, Leonard Dec., Ex. 3.

Pepper's trust balance for Global Baristas to zero. *All* of the 2013 transfers were held by Foster Pepper in trust, and none of those funds were retained by Foster Pepper.

### The May 2014 and July 2014 Wire Transfers

On May 23, 2014, EA wired $500,000 to Foster Pepper. The funds originated from the EA Operating Account, per the Credit Confirmation received by FP.[11] Foster Pepper attorney Jack Cullen asked that the funds be transferred to the client trust account on May 23, 2014, identifying their "Client designated use" as "Settlement funds."[12]

The $500,000 was held in trust until June 24, 2014, when $346,109.62 of it was applied to GB's outstanding invoices. Avenatti authorized that use of the funds by email dated June 23, 2014.[13] The balance of $153,890.38 remained in the trust account for GB. On July 21, 2014, Foster Pepper received an additional $360,235.00 from GB.[14] The funds were deposited into the GB Trust Account and designated as "Settlement" funds.[15] Three days later, on July 24, 2014, Foster Pepper wired $514,125.00 to Green Mountain, a supplier to GB, bringing the GB Trust Account balance to $0.38.[16]

## III.    DISCUSSION

A.    Standards for Summary Judgment.

Claims lacking merit may be dealt with through summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[17] *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to

---

[11] *See* FG-EA0000330, Leonard Decl., Ex. 4.
[12] FG-EA0000329; 332, Leonard Decl., Ex. 5.
[13] FG-EA000293; 1018-19, Leonard Decl., Ex. 5.  The email was copied to Tod McDonald, then the CEO of Global Baristas.  *Id.*  The payment covered "Matter #1," which was the GB bankruptcy matter. *Id.*
[14] FG-EA0000336 (credit confirmation, showing "Global Baristas US LLC" as originating party). Leonard Decl., Ex. 6.
[15] FG-EA0000335 (Request to Place Funds in Trust); see also FG-EA0000338 (Cullen email instructing Jesslyn Phousavan to place funds in trust). Leonard Decl., Ex. 7.
[16] FG-EA0000296. Leonard Decl., Ex. 8.
[17] Fed. R. Civ. P. 56 applies in bankruptcy proceedings pursuant to Bankruptcy Rules 9014 and 7056.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is only "genuine" if it is supported by admissible evidence on which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

A defendant moving for summary judgment can carry its initial burden by producing evidence that negates an essential element of the plaintiff's claim, or by establishing that the plaintiff does not have enough evidence to prove an essential element of its claim at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Once this has occurred, the procedural burden shifts to the plaintiff, who must go beyond the pleadings and present evidence sufficient to prove the essential elements of its claim, *i.e.*, establish that there is a "genuine issue" for trial. Fed.R.Civ. P. 56(e). The plaintiff must do more than simply deny the veracity of the defendant's evidence, or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the plaintiff's position is likewise insufficient to create a "genuine" factual dispute. *Anderson,* 477 U.S. at 252. Fed.R.Civ.P. 56(e). A failure of proof concerning an essential element of a plaintiff's claim necessarily "renders all other facts immaterial," and entitles the defendant to summary judgment against that claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

B.    <u>Actual Fraudulent Transfers; "Recovery" Under 11 U.S.C. § 550.</u>

To sustain his claims for intentional fraudulent transfer under Cal. Civ. Code § 3439.04(a)(1) the Plaintiff must prove that EA made a specific transfer of property with the actual intent to hinder, delay or defraud a creditor. Typically, the debtor's scienter will be shown by facts that support a reasonable inference of fraudulent intent (*i.e.,* a plausible, rather than merely possible claim), "drawn from the circumstances surrounding the transaction and the relationship and interests of the parties." *See Neumeyer v. Crown Funding Corp.*, 56 Cal.App.3d

178, 183, 128 Cal. Rptr. 366 (1976). If that burden is met, the transfer may be "avoided." The question then turns to whether the voidable transfer may be "recovered" from a "transferee," which is governed by 11 U.S.C. § 550.[18]

11 U.S.C. § 550, "Liability of transferee of avoided transfer," provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –

    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from –

    (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
    (2) any immediate or mediate good faith transferee of such transferee.

Thus, the first question regarding a trustee's ability to *recover* an avoidable transfer under § 550(a)(1) is whether the person or entity who received property from a debtor is an "initial transferee" within the meaning of the statute.

C.    <u>Foster Pepper Was Not An "Initial Transferee" Of The Subject Wires Under § 550(a).</u>

There is no genuine dispute that, under Washington law and the Rules of Professional Conduct, Foster Pepper did not have legal title to or "the right to use the funds it received in trust from EA as it saw fit." Consequently, Foster Pepper did not have "dominion" over the funds, and was not the "initial transferee" of the funds under controlling Ninth Circuit precedent.

---

[18] The provisions of Section 550 implicitly recognize that the *avoidance* of a transfer and the *recovery* of the transfer from an initial transferee present two different issues. *In re Sawran*, 359 B.R. 348, 351 (Bankr. S.D. Fla. 2007); *see, e.g., In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003); *In re Kingsley*, 518 F.3d 874, 877 (11th Cir. 2008).

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 7
FG:54359344.1

1.    *A party who lacks "dominion" over transferred funds – legal title and the right to use the money as it sees fit – is not an "initial transferee" under § 550(a).*

The Ninth Circuit has adopted the "dominion" test to determine whether one receiving money from a debtor is an initial transferee under § 550(a). *See Matter of Walldesign, Inc.*, 872 F.3d 954, 963 (9th Cir. 2017) (quoting *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988) ("*Bonded*") (" '[t]ransferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent' "; "a transferee [under § 550(a)] is one who ... has dominion over the money or other asset," *i.e.*, "the right to put the money to one's own purposes")). Under the dominion test, "the touchstones ... for initial transferee status are legal title and the ability of the transferee to freely appropriate the transferred funds," "to use [the funds] as he sees fit." *Id.* (quoting *In re Incomnet*, 463 F.3d 1064, 1071 (9th Cir. 2006)). "[A]n individual will have dominion over a transfer if, for example, he is 'free to invest the whole [amount] in lottery tickets or uranium stocks." *Bonded Fin. Servs.* 838 F.2d at 894. Thus, "the minimum requirement of status as a 'transferee' is dominion over money or other asset, the right to put the money to one's own purposes. *When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded.*" *Incomnet,* 463 F.3d at 1070 (quoting *Bonded*, 838 F.2d at 893 (emphasis supplied).[19]

Numerous courts have held that a party like Foster Pepper who receives money in trust for the debtor or others, or as a "mere conduit" for delivery to a third party and without the ability to use the funds as it sees fit, is not an "initial transferee" of the money under § 550(a). *See, e.g., Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334 (Bankr. S.D.N.Y. 1983) (law firm not an initial transferee because it acted as a mere conduit of funds from debtor to defendant client who had direct business dealings with debtor giving rise to debt);

---

[19] The Ninth Circuit has also confirmed its explicit adoption of the "pure dominion test" in *Universal Serv. Admin. Co. v. Post-Confirmation Comm. (In re Incomnet, Inc.)*, 463 F.3d 1064, 1071 (9th Cir. 2006). *See also Abele v. Mod. Fin. Plans Servs. (In re Cohen)*, 300 F.3d 1097, 1102 n.2 (9th Cir. 2002), (taking care to distinguish dominion test from the often-conflated and more lenient control test which has been expressly rejected); *Mano-Y & M, Ltd. Field (In re Mortg. Store, Inc.)*, 773 F.3d, 990, 995-96 (9th Cir. 2014) (adhering to the "pure dominion test").

1    *Ducker v. Fairmeadows II* (*In re Bridges Enters., Inc.*), 62 B.R. 300 (Bankr. S.D. Ohio 1986)

2    (where debtor's payment in settlement of a lawsuit was delivered first to debtor's attorney and

3    then to plaintiff's attorney before being forwarded to plaintiffs themselves, neither attorney was

4    initial transferee within the meaning of § 550(a)(1));  *Matter of Coutee*, 984 F.2d 138, 141 (5th

5    Cir. 1993) (law firm holding client settlement funds in it trust account is not an initial transferee);

6    *In re Henninger*, 336 B.R. 733, 737 (Bankr. N.D. Tex.) (attorney was not initial transferee of

7    funds held in client trust account, in fiduciary capacity); *see also Salomon v. Nedlloyd, Inc.* (*In re*

8    *Black & Geddes, Inc.*), 59 B.R. 873 (Bankr. S.D.N.Y. 1986) (commercial organization engaged

9    in negotiation of debt settlement and collection of funds from debtor as creditor's agent was not

10   an initial transferee of such funds within the meaning of § 550(a)(1)); *Bonded,* 838 F.2d at 893

11   (bank which had received check payable to itself from debtor-currency exchange and deposited

12   check in account belonging to exchange's owner as directed by debtor was not the initial

13   transferee of funds under § 550(a)(1)); *Nordberg v. Societe Generale (In re Chase & Sanborn*

14   *Corp.)*, 68 B.R. 530 (Bankr. S.D. Fla. 1986) (bank was a mere commercial conduit of wire

15   transfer from debtor and not the initial transferee under § 550(a)(1)); *Metsch v. First Alabama*

16   *Bank of Mobile (In re Colombian Coffee Co.)*, 59 B.R. 643 (Bankr. S.D. Fla. 1986), *aff'd* 75 B.R.

17   177 (S.D. Fla. 1987) (disapproved on other grounds by *Bonded Fin. Servs.*) (bank was not an

18   initial transferee of allegedly fraudulent transfers so as to be liable to bankruptcy trustee under

19   § 550(a)(1)); *In re Sawran*, 359 B.R. 348, 353 (Bankr. S.D. Fla. 2007) (collecting cases).

20          2.    *Foster Pepper did not have dominion over funds held in trust account and paid to third parties.*

21

22          Funds held in an attorney's client trust account are not "free for appropriation" or subject

23   to use as the attorney "sees fit." A lawyer cannot "use, convert, borrow or pledge client or third

24   person property for the lawyer's own use."  Washington RPC 1.15(b). Indeed, an attorney cannot

25   even commingle personal funds with trust account funds. *In re Disciplinary Proceeding Against*

26   *Trejo*, 163 Wn.2d 701, 185 P.3d 1160 (2008); *In re Disciplinary Proceeding Against Young Suk*

27   *Oh*, 176 Wn.2d 245, 290 P.3d 963 (2012). Instead, client funds must be placed into an interest

28   bearing trust account , and property belonging to clients or third parties in a lawyer's possession,

and escrow or other funds held by a lawyer incident to the closing of any real estate or personal property transaction, must be held separate from the lawyer's own property. Washington RPC 1.15. Notably, funds cannot even be withdrawn from the trust account to pay attorney fees if there is *any dispute* regarding the attorney's right to receive the fees. RPC 1.15(c). Additionally, the unauthorized use of IOLTA trust account funds is a crime under Washington law. *See State v. Kinneman*, 120 Wn.App. 327 (2003) (affirming conviction of theft under Washington law for unauthorized withdrawal of funds held in attorney's client trust account). As the Washington Supreme Court has noted, "[w]hen lawyers use clients' funds for their own personal use or mishandle trust funds, disbarment is the usual result." *Matter of Salvesen*, 94 Wn.2d 73, 76, 614 P.2d 1264 (1980) (citing *In re Kumbera*, 91 Wash.2d 401, 403, 588 P.2d 1167 (1979); *In re Deschane*, 84 Wash.2d 514, 517, 527 P.2d 683 (1974); *In re Batali*, 85 Wash.2d 246, 251-52, 533 P.2d 843 (1975)). Thus, there can be no argument that the funds Foster Pepper held in its IOLTA trust account were not subject to use as Foster Pepper "saw fit."

Foster Pepper received all of the June 25, 2013 wire transfer from EA in trust, paid the funds out as directed by Mr. Avenatti, returned the balance to EA, and retained none of the funds for itself. Similarly, Foster Pepper held the May 23, 2014 wire transfer of $500,000 from EA in trust, and paid $153,890.00 of that amount to Green Mountain in settlement of a claim against GB in July 2014. Foster Pepper did not have dominion over those funds, and therefore is not an "initial transferee" from whom the funds can be recovered under § 550(a).  Summary judgment is proper in the amount of $909,818.65 against Plaintiff's claims based on the June 25, 2013 wire transfer, and in the amount of $153,890 against Plaintiff's claims based on the May 23, 2014 wire transfer, for a total of $1,063,708.65.

## IV.    CONCLUSION

The cornerstone of Plaintiff's "intentional fraudulent transfer" claims in this action is the allegation that EA paid Foster Pepper $1,770,818.85 "*as compensation to Foster Pepper for its role in acquiring and/or representing Tully's Coffeey on behalf of Avenatti and/or his affiliates.*" (Complaint, Doc. 1, ¶ 30). That allegation is indisputably false as to the $7,000,000 wire transfer

1  from EA to Foster Pepper on June 25, 2013, which was held in trust and used to pay for the

2  acquisition of the Tully's Coffee bankruptcy assets or returned to EA on July 2, 2013, and it is

3  indisputably false as to $153,890 of the $500,000 wire transfer to Foster Pepper on May 23,

4  2014, which was held in trust and used to settle the Green Mountain claim against GB on July

5  24, 2014. Foster Pepper did not have "dominion" over that money under Washington law, and

6  therefore is not an initial transferee of the money under 11 U.S.C. § 550(a).  Summary judgment

7  should be entered in the amount of $909,818.65 against Plaintiff's claims based on the June 25,

8  2013 wire transfer, and in the amount of $153,890 against Plaintiff's claims based on the May

9  23, 2014 transfer, for a total of $1,063,708.65.

10  Date: August 18, 2021                    PAGTER AND PERRY ISAACSON

11                                           /s/ Misty Perry Isaacson

12                                           _____
                                             Misty Perry Isaacson, Attorneys for
13                                           Foster Garvey P.C.

14  Date:  August 18, 2021                   FOSTER GARVEY, PC

17                                           _____
                                             John R. Nelson, Attorneys for
18                                           Foster Garvey P.C. (Admitted Pro Hac Vice)

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 11
FG:54359344.1

APPENDIX A (Ex. A to Complaint)

| DATE | AMOUNT | DESCRIPTION | FROM ACCOUNT | TO ACCOUNT |
|---|---|---|---|---|
| 6/25/13 | ($7,000,000.00) | Wire/Out to Foster Pepper IOLTA Trust Account- | EA's IOLTA Trust Account | Foster Pepper Client Trust Account |
| 7/2/13 | $2,429,893.13 | Wire/In from Foster Pepper, "Return O" | Foster Pepper Client Trust Account | EA's IOLTA Trust Account |
| 7/5/13 | $1,500,000.00 | Wire/In from Foster Pepper, "In Payme" | Foster Pepper Client Trust Account | EA's IOLTA Trust Account |
| 7/9/13 | $ 350.000.00 | Wire/In from Foster Pepper, "Settleme" | Foster Pepper Client Trust Account | EA's IOLTA Trust Account |
| 7/11/13 | $1,810,288.22 | Wire/In from Foster Pepper, "Settleme" | Foster Pepper Client Trust Account | EA's IOLTA Trust Account |
| 5/23/14 | ($500,000.00) | Wire/Out to Foster Pepper | EA's Operating Account | Foster Pepper Client Trust Account |
| 12/24/14 | ($361,000.00) | Wire/Out to Foster Pepper | EA's Operating Account | Foster Pepper Client Trust Account |

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 12
FG:54359344.1

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**525 N. Cabrillo Park Drive, Suite 104, Santa Ana, CA  92701**

 A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND FOSTER GARVEY PC'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF AMANDA LEONARD IN SUPPORT THEREOF, EXHIBIT 1, [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION OF FOSTER GARVEY PC FOR PARTIAL ADJUDICATION OF PLAINTIFF'S FIRST, SECOND AND FOURTH CAUSES OF ACTION AND [PROPOSED] ORDER GRANTING MOTION OF FOSTER GARVEY PC FOR PARTIAL ADJUDICATION OF PLAINTIFF'S FIRST, SECOND AND FOURTH CAUSES OF ACTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **08/18/2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steven Casselberry**    s.casselberry@mpglaw.com, j.jacobs@mpglaw.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Jack A. Reitman**    jareitman@landaufirm.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **John P. Reitman**    jreitman@landaufirm.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐     Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **08/18/2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

U.S. Bankruptcy Court – Santa Ana Division
Ronald Reagan Federal Building
**Attn: Chambers of Hon. Scott C. Clarkson**
411 West Fourth Street Suite 5130
Santa Ana, CA 92701-4593
**(Judge's Copy)**

☐     Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 08/18/2021 | IMELDA BYNOG | /s/ *Imelda Bynog* |
| *Date* | *Printed Name* | *Signature* |

NOTICE OF MOTION AND FOSTER GARVEY PC'S
MOTION FOR SUMMARY JUDGMENT - 13
FG:54359344.1