Misty Perry Isaacson, CA SBN 193204
PAGTER AND PERRY ISAACSON, APLC
525 N. Cabrillo Park Drive, Ste 104
Santa Ana, CA 92701
(714) 541-6072 (tel)
(714) 541-6897 (fax)
Email:  misty@ppilawyers.com

John Ray Nelson, WSBA #16393
Foster Garvey P.C.
618 W. Riverside Avenue, Ste 300
Spokane, WA 99201
(509) 777-1604 (tel)
(509) 777-1616 (fax)
Email:  john.nelson@foster.com
Admitted Pro Hac Vice

*Attorneys for Defendant Foster Garvey P.C.*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>                                  Debtor. | Case No.: 8: l9-bk-13560-CB<br><br>Chapter 7<br><br>Adversary No.: 20-ap-01052-SC |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>                                  Plaintiff,<br><br>FOSTER GARVEY PC, as successor in-interest to FOSTER PEPPER, PLLC, a Washington professional corporation,<br><br>                                  Defendant. | DEFENDANT FOSTER GARVEY PC'S OPPOSITION TO MOTION TO CONTINUE PRETRIAL CONFERENCE; DECLARATION OF MISTY PERRY ISAACSON IN SUPPORT THEREOF<br><br>**Hearing**<br>Date:  December 1, 2021<br>Time:  1:30 p.m.<br>Ctrm:  5C<br>Place:  Virtual via ZoomGov<br><br>Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC and then selecting "Judge Clarkson" from the tab on the left-hand side of the page. |

Defendant, Foster Garvey PC, by and through its attorneys, hereby opposes the Plaintiff's Motion to continue the Pretrial Conference ("Motion") currently scheduled for December 1, 2021 at 1:30 p.m. as follows:

## I.

## **INTRODUCTION**

Plaintiff's Motion requests to modify the Court's prior scheduling orders [Docket Nos. 46 & 75] to once again continue the pretrial conference set in this matter.[1]  Plaintiff's Motion should be denied because: (1) Plaintiff has not demonstrated good cause to modify the current scheduling order; (2) Plaintiff's request to continue the pretrial conference relates to the Plaintiff's failure to exercise due diligence and what appears to be a tactical decision to wait until shortly before the proposed pretrial stipulation is required to be filed with this Court; (3) continuance of this matter is prejudicial to defendants.

The Defendant submits that the real reason that Plaintiff is seeking to modify this Court's scheduling order and continue the pretrial conference is that Plaintiff realized it cannot prove or establish (circumstantially or otherwise) the element of intent with the facts and evidence they have gathered through their discovery to date.  The within adversary case was filed nineteen months ago, yet during that time the Plaintiff has not sought any third party discovery, subpoenaed any potential witnesses for deposition, nor has it informed the Defendant or this Court, *until now*, of any potential problems that it believes may exist with certain persons they intend to call as witnesses in the within matter.  All this notwithstanding the fact that the criminal proceeding against Michael Avenatti ("Avenatti") was filed one year prior to the within matter[2] and when many of the proposed witnesses listed in the Motion were also identified in the Plaintiff's initial disclosures served on the Defendant's counsel on or about December 18, 2020.

---

[1] The pretrial conference was originally set for April 28, 2021.  However, at Plaintiff counsel's request on or about March 19, 2021, the parties stipulated, with the Court's approval, to extend the discovery deadlines and the pretrial conference to December 1, 2021.

[2] The Complaint filed by the United States of America against Avenatti was filed in the United States District Court for the Central District of California on March 22, 2019.

- 1 -

## II.

## **PROCEDURAL HISTORY**

1. Plaintiff's counsel, on behalf of Eagan Avenatti's ("EA") receiver, first made demand on Defendant regarding the claims in this action on May 23, 2019 (30 months ago) seeking $1,813,373.87.

2. Plaintiff's Complaint was filed on April 14, 2020 and asserted three claims for "intentional fraudulent transfer" under Cal. Civ. Code § 3439.04(a) (the first, second and fourth claims for relief), and one claim for "constructive fraudulent transfer" under Cal. Civ. Code § 3439.05 (the third claim for relief). The Complaint sought recovery of the transferred funds in the amount of $1,813,373.87 ("Transfers") under 11 U.S.C. § 550(a)(1), (a)(2), and § 551 (the fifth claim for relief).

3. On June 15, 2020 Defendant filed a motion to dismiss the Complaint, wherein it argued the bulk of the Complaint focuses on events that occurred well after FP was paid and more importantly that the "*relevant* facts do not support a reasonable inference of actual fraudulent intent . . ." Although the Court denied the Defendants' Motion on October 5, 2020, the Plaintiff was well aware that it would be required to prove the element of intent via circumstantial evidence, including the witnesses it now claims to be important to its case.

4. On July 14, 2020, Defendant filed a motion for summary judgment against the Plaintiff's third cause of action, because the transfer to FP was for the payment of costs and attorney fees in the amount of $45,555.22 for legal services *provided to EA* in two related bankruptcy matters. Notwithstanding the fact the Defendant provided undisputed evidence of such representation, Plaintiff thereafter argued in opposition that EA did not receive reasonably equivalent value for the funds paid to FP. On November 2, 2020, the Court entered summary judgment against Plaintiffs' Third Cause of Action for constructive fraudulent transfer [Docket No. 53].

5. After the initial status conference on September 23, 2020, to which counsel for both parties appeared, on October 7, 2020 the Court entered a scheduling order setting forth

certain deadlines, including a discovery cut-off of January 29, 2021 and a pretrial conference scheduled for April 28, 2021 [Docket No. 46].

6. On October 8, 2020, the Defendant filed its answer to the Complaint.

7. Shortly thereafter, on or October 27, 2020, Plaintiff's counsel reached out to Defendant's counsel seeking an extension of discovery cutoff dates. Counsel indicated that the request was being made as the "Trustee has filed additional avoidance actions and is seeking to extend the discovery cutoff dates . . . to keep everything as coordinated as possible."

8. On or about November 9, 2020, the parties entered into a stipulation requesting the extension of the discovery deadline to April 30, 2021 and the pretrial conference to September 29, 2021 [Docket No. 55]. The Court approved the parties' stipulation by order entered that same day [Docket No. 56].

9. On or about December 18, 2020, Plaintiff served its Initial Disclosure on Defendant's counsel. Plaintiff's disclosure identified the following individuals as likely to have discoverable information to support its claims or defenses: (a) Brian Weiss; (b) Jason Frank; (c) Scott Simms; (d) Andrew Stolper; (e) Michael Avenatti; (f) Judy K. Regnier; (g) Internal Revenue Service; (h) United States Government attorneys Andre Julian and Bret Sagel; (i) William Parrish; (j) Geoffrey E. Johnson; (k) Gregory Barela; (l) Stoll, Nussbaum & Polakov; (m) Valid8; and (n) Alexis Gardner. The majority of these people or entities are the same persons or entities from whom Plaintiff's counsel now "does not believe it will be feasible to obtain testimony at trial in this adversary proceeding . . . until after the conclusion of their testimony in the Criminal Case."

10. On or about February 2, 2021, Defendant received the Plaintiff's first round of discovery requests (Requests for Admission, Requests for Production, and Interrogatories). Plaintiff has never served a single third party subpoena in this action, nor has he ever taken a single deposition, and has never inquired of Defendant's ability to attend any deposition.

11. On or about March 19, 2021, Plaintiff's counsel requested that Defendant stipulate once again to a sixty-day extension of the discovery cutoff and related hearing dates. Thereafter the parties entered into a second stipulation to extend the discovery cutoff and related

hearing deadlines [Docket No. 74]. On March 24, 2021, the Court approved the parties' stipulation and extended the discovery cut-off to July 30, 2021 and the pretrial conference to December 1, 2021 [Docket No. 75].

12. Just two weeks prior to the discovery cut-off deadline, on July 14, 2021, Plaintiff's counsel made yet another request to extend the discovery cut-off and related deadlines in this action, contending that "[t]here is discovery we would like to take that cannot be taken until his [Avenatti] criminal trial (or at least a portion of his criminal trial) has been concluded. . ."

13. On July 27, 2021 Defendant's counsel declined Plaintiff's request to further extend the discovery deadline yet a third time, stating: "I'm afraid we will not stipulate to extend the discovery deadline or other pretrial dates again. We have already extended the discovery deadline (and other dates) twice in this action, first from January 20, 2021 to April 30, 2021, and then again to July 30, 2021. Mr. Avenatti's circumstances are not new and were not unknown to you when you filed the action or set the previous dates. . . We need to try this case and see the evidence that supports your allegations so we can get on with other matters." After this email message, the July 30, 2021 discovery deadline passed without further communication from Plaintiff's counsel.

14. On August 18, 2021, Defendant filed a motion for partial summary judgment [Docket No. 80] against the first, second and fourth causes of action to the extent they sought to avoid transfers to FP made in June 2013, or the portion of a transfer made to FP in May 2014. On September 23, 2021, the parties entered a stipulation resolving the motion for partial summary judgment in FG's favor [Docket No. 88], which stipulation was approved by order of the Court that same day [Docket No. 88].

15. With the resolution of the Defendant's recent motion for partial summary judgment, the amounts remaining in controversy in this action are (i) the remaining $346,109.62 from the transfer of $500,000 on May 23, 2014; and (ii) a transfer of $361,000 made to FP on December 24, 2014 (the "transfers remaining at issue").

# III.

# ARGUMENT

### A. Plaintiff has not Demonstrated "Good Cause" to Amend/Modify the Scheduling Order

Plaintiff asserts that "cause" exists to amend/modify the scheduling order and continue the pretrial conference under Federal Rule of Bankruptcy Procedure 9006 due to Plaintiff Counsel's belief that it will not be feasible to obtain testimony at trial from certain witnesses until after the conclusion of their testimony in the Criminal Case. Such belief is based on an alleged telephone conversation Plaintiff's counsel had with "Assistant United States Attorneys ('AUSAs') and others regarding, among other things, discovery I had undertaken to pursue in the EA bankruptcy case." However, devoid from the Plaintiff's Motion or the declaration in support thereto is any date and/or timeframe in which Plaintiff's Counsel had such conversation with the AUSAs. Defendant suspects that this omission was intentional as it would show Plaintiff was well aware of potential scheduling difficulties, but failed to raise or address the issue with Defendant's counsel or the Court.

Pursuant to Fed. R. Civ. P. 16(b)(4) (as incorporated by Fed. R. Bankr. P. 7016), "[a] schedule may be modified only for good cause and with the judge's consent." "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order ... will not be disturbed unless they evidence a clear abuse of discretion." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, **Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment**." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If the party seeking the modification was not diligent, the inquiry should end and the motion to

1  modify should not be granted." *Zivkovic*, 302 F.3d at 1087." *Thompson v. BMW of N. Am., LLC*,

2  334 F.R.D. 230, 232–33 (C.D. Cal. 2020). "A scheduling order is not a frivolous piece of paper,

3  idly entered, which can be cavalierly disregarded." (internal quotations omitted)). *Id.,* quoting

4  *Johnson*, 975 F.2d at 610.

5      Here, Plaintiff's attempt to convince this court that it has been diligent in prosecuting this

6  case forward is disingenuous at best.  In reality, the Plaintiff made a calculated, tactical decision

7  not to schedule any depositions of these potential witnesses or otherwise timely advise

8  Defendant's counsel and this Court that their discovery would be impeded by Avenatti's Criminal

9  Case.  This is not a new issue.  Plaintiff cannot excuse its inaction and lack of diligence by

10 reference to the status of Avenatti's Criminal Case as the same was filed more than a year before

11 the within matter.[3]  Plaintiff has had more than seventeen months in which to advise the

12 Defendant and the Court that it would likely have difficulties in obtaining testimony from

13 potential witnesses.

14     Defendants are not required to demonstrate prejudice in order to have valid objections to

15 the Plaintiff's delinquent and unjustified request for a continuance of the pretrial conference.

16 However, Defendants are prejudiced by Plaintiff's request because of the delay in setting this

17 matter for trial and further depriving the Defendants with their timely day in Court.

18 **B.**    **<u>Testimony Plaintiff Purports to Need is Irrelevant to the Within Matter</u>**

19     The issue before the Court is Avenatti's actual intent in using EA funds to pay FP for the

20 legal services it rendered to his company Global Baristas, *not* the alleged "wire fraud, tax evasion,

21 bank fraud, and bankruptcy crimes" case that the Plaintiff appears to want to try.  As the Court of

22 Appeals for the Second Circuit recently made clear in *In re Trib. Co. Fraudulent Conv. Litig.,* 10

23 4th 147 (2nd Cir. 2021) "[t]he alleged fraud must relate to the specific payment or transfer the

24 plaintiff is seeking to avoid, rather than to the overall course of business." *Id.,* 10 F4th at, 159–60

25 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2nd Cir. 2005) (differentiating between alleged

26 fraud in obtaining funding from noteholders and subsequent payment of some proceeds to

---

[3] The Criminal Complaint identified as *United States v. Michael J. Avenatti* (Case No. 8:19-cr-00061-JVS) was filed on March 22, 2019.

- 6 -

1 defendant)); *accord Bos. Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1510 (1st Cir. 1987) (requiring "fraud or dishonesty" in transfers to transferees, rather than in manner debt arose to creditor; "Fraudulent conveyance law is basically concerned with transfers that "hinder, delay or defraud" creditors; it is not ordinarily concerned with how such debts were created"); *Silica Tech, L.L.C. v. J-Fiber, GmbH*, No. CIV A 06-10293-WGY, 2009 WL 2579432, at *17 (D. Mass. Aug. 19, 2009) ("It is the transfer or the conveyance of the claim in a fraudulent manner as a means to defraud the creditors of the debtor that is central to the statute"). EA's payments to FP were *not* made in furtherance of a Ponzi scheme, and FP's services resulted in the acquisition of a hard asset by Avenatti that paid millions of dollars *into* the EA account over the next several years. Consequently, the reasoning of *In re International Manufacturing Group, Inc.,* 538 B.R. 22 (E.D.Cal. Bankr. 2015) does not apply as an exception to the rule set forth in *In re Chicago Tribune*.

Notably, Plaintiff has not brought forth a *single piece* of evidence to support his burden of proof on the issue of Avenatti's intent in paying FP. Instead, Plaintiff's motion is addressed exclusively to witnesses in the criminal case. Nor does Plaintiff offer a single word in explanation of how witnesses he has failed to subpoena or depose over the past 19 months will support his burden of proof as to *any* of the "eleven badges of fraud" by which intent might be proven under the express terms of the California statute.

Plaintiff's motion also assiduously avoids any discussion of precise dates. Plaintiff does not say when the "bad acts" Avenatti allegedly committed occurred, as necessary to suggest any relevance to Avenatti's intent in making payments to FP. *See Osram Sylvania, Inc. v. Townsend Ventures, LLC,* 2013 Del. Ch. Lexis 281, *55, 2013 WL 6199554 ("A claim improperly based on hindsight attempts to infer fraudulent intent based solely on subsequent activity"); *Sanders v. Devine*, 1997 Del. Ch. LEXIS 131, 1997 WL 599539, at *9 (Del. Ch. Sept. 24, 1997) (declining to infer fraudulent intent as of the date shares were issued solely because those shares later were cashed out by the issuer); *Noerr v. Greenwood*, 1997 Del. Ch. LEXIS 121, 1997 WL 419633, at *5 (Del. Ch. July 16, 1997) (declining to infer share price was misrepresented simply because of a later stock price increase). Nor does Plaintiff's motion disclose the time at which his counsel

had a telephone conversation with the AUSAs regarding discovery in the EA bankruptcy case (Reitman Dec., Doc. 95, p. 10:1-7), or offer any explanation as to why Plaintiff did not share that information with Plaintiff's counsel or the Court at any time over the past 19 months -- until the day of the Pretrial attorneys' conference. This information, at the *very least,* would be necessary for Plaintiff to carry his burden in this motion of proving an inability to comply with the Scheduling Order despite due diligence – which he also ignores.

## IV.

## **CONCLUSION**

Plaintiff has not set forth any reason to continue the pretrial conference other than the neglect and carelessness of prosecuting this matter. Other than as previously adjudicated by this court on the Defendant's motions for partial summary judgment, the Plantiff's claim and the Defendant's defense have not changed since the parties initially engaged in their Fed. R. Civ. P. 26(f) conference. The fact that the Plaintiff only recently decided to engage in this case and consider the weaknesses of its remaining claims against Defendant does not constitute good cause to modify the Court's prior scheduling order.

WHEREFORE, Defendants respectfully request that this Court enter an Order denying the Plaintiff's Motion to Continue the Pretrial Conference, proceed with the setting of this matter for trial, and for such other and further relief as this Court deems just and proper.

Date:  November 16, 2021                        PAGTER AND PERRY ISAACSON

/s/ Misty Perry Isaacson

Misty Perry Isaacson, Attorneys for
Foster Garvey P.C.

Date:  November 16, 2021                        FOSTER GARVEY P.C.

John R. Nelson, Attorneys for
Foster Garvey P.C. (Admitted Pro Hac Vice)

**DECLARATION OF MISTY PERRY ISAACSON**

I, Misty Perry Isaacson, declare as follows:

1. I am an individual over the age of eighteen, and am an attorney licensed to practice law in the State of California and all District and Bankruptcy Courts in California. I am co-counsel of record for Defendant. Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents, including the documents provided filed with the United States Bankruptcy Court. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2. I make this declaration in support of Foster Garvey PC's Opposition to Plaintiff's Motion to Continue Pretrial Conference.

3. I am informed and believe that Plaintiff's counsel, on behalf of Eagan Avenatti's ("EA") receiver, first made demand on Defendant regarding the claims in this action on May 23, 2019 (30 months ago) seeking $1,813,373.87.

4. Plaintiff's Complaint was filed on April 14, 2020 and asserted three claims for "intentional fraudulent transfer" under Cal. Civ. Code § 3439.04(a) (the first, second and fourth claims for relief), and one claim for "constructive fraudulent transfer" under Cal. Civ. Code § 3439.05 (the third claim for relief). The Complaint sought recovery of the transferred funds in the amount of $1,813,373.87 ("Transfers") under 11 U.S.C. § 550(a)(1), (a)(2), and § 551 (the fifth claim for relief).

5. On June 15, 2020 Defendant filed a motion to dismiss the Complaint, wherein it argued the bulk of the Complaint focuses on events that occurred well after FP was paid and more importantly that the "*relevant* facts do not support a reasonable inference of actual fraudulent intent . . ." Although the Court denied the Defendants' Motion on October 5, 2020, the Plaintiff was well aware that it would be required to prove the element of intent via circumstantial evidence, including the witnesses it now claims to be important to its case.

9

6. On July 14, 2020, Defendant filed a motion for summary judgment against the Plaintiff's third cause of action, because the transfer to FP was for the payment of costs and attorney fees in the amount of $45,555.22 for legal services *provided to EA* in two related bankruptcy matters. Notwithstanding the fact the Defendant provided undisputed evidence of such representation, Plaintiff thereafter argued in opposition that EA did not receive reasonably equivalent value for the funds paid to FP. On November 2, 2020, the Court entered summary judgment against Plaintiffs' Third Cause of Action for constructive fraudulent transfer [Docket No. 53].

7. After the initial status conference on September 23, 2020, to which counsel for both parties appeared, on October 7, 2020 the Court entered a scheduling order setting forth certain deadlines, including a discovery cut-off of January 29, 2021 and a pretrial conference scheduled for April 28, 2021 [Docket No. 46].

8. On October 8, 2020, the Defendant filed its answer to the Complaint.

9. Shortly thereafter, on or October 27, 2020, Plaintiff's counsel reached out to me seeking an extension of discovery cutoff dates. Counsel indicated that the request was being made as the "Trustee has filed additional avoidance actions and is seeking to extend the discovery cutoff dates . . . to keep everything as coordinated as possible."

10. On or about November 9, 2020, the parties entered into a stipulation requesting the extension of the discovery deadline to April 30, 2021 and the pretrial conference to September 29, 2021 [Docket No. 55]. The Court approved the parties' stipulation by order entered that same day [Docket No. 56].

11. On or about December 18, 2020, Plaintiff served its Initial Disclosure on me. Plaintiff's disclosure identified the following individuals as likely to have discoverable information to support its claims or defenses: (a) Brian Weiss; (b) Jason Frank; (c) Scott Simms; (d) Andrew Stolper; (e) Michael Avenatti; (f) Judy K. Regnier; (g) Internal Revenue Service; (h) United States Government attorneys Andre Julian and Bret Sagel; (i) William Parrish; (j) Geoffrey E. Johnson; (k) Gregory Barela; (l) Stoll, Nussbaum & Polakov; (m) Valid8; and (n)

Alexis Gardner. The majority of these people or entities are the same persons or entities from whom Plaintiff's counsel now "does not believe it will be feasible to obtain testimony at trial in this adversary proceeding . . . until after the conclusion of their testimony in the Criminal Case."

12. On or about February 2, 2021, I received the Plaintiff's first round of discovery requests (Requests for Admission, Requests for Production, and Interrogatories). Plaintiff has never served a single third party subpoena in this action, nor has he ever taken a single deposition, and has never inquired of Defendant's ability to attend any deposition.

13. On or about March 19, 2021, Plaintiff's counsel requested that Defendant stipulate once again to a sixty-day extension of the discovery cutoff and related hearing dates. Thereafter the parties entered into a second stipulation to extend the discovery cutoff and related hearing deadlines [Docket No. 74]. On March 24, 2021, the Court approved the parties' stipulation and extended the discovery cut-off to July 30, 2021 and the pretrial conference to December 1, 2021 [Docket No. 75].

14. Just two weeks prior to the discovery cut-off deadline, on July 14, 2021, Plaintiff's counsel made yet another request to extend the discovery cut-off and related deadlines in this action, contending that "[t]here is discovery we would like to take that cannot be taken until his [Avenatti] criminal trial (or at least a portion of his criminal trial) has been concluded. . ."

15. On July 27, 2021 Defendant's counsel, John Nelson, declined Plaintiff's request to further extend the discovery deadline yet a third time, stating: "I'm afraid we will not stipulate to extend the discovery deadline or other pretrial dates again. We have already extended the discovery deadline (and other dates) twice in this action, first from January 20, 2021 to April 30, 2021, and then again to July 30, 2021. Mr. Avenatti's circumstances are not new and were not unknown to you when you filed the action or set the previous dates. . . We need to try this case and see the evidence that supports your allegations so we can get on with other matters." After this email message, the July 30, 2021 discovery deadline passed without further communication from Plaintiff's counsel.

16.    On August 18, 2021, Defendant filed a motion for partial summary judgment [Docket No. 80] against the first, second and fourth causes of action to the extent they sought to avoid transfers to FP made in June 2013, or the portion of a transfer made to FP in May 2014. On September 23, 2021, the parties entered a stipulation resolving the motion for partial summary judgment in FG's favor [Docket No. 88], which stipulation was approved by order of the Court that same day [Docket No. 88].

17.    With the resolution of the Defendant's recent motion for partial summary judgment, the amounts remaining in controversy in this action are (i) the remaining $346,109.62 from the transfer of $500,000 on May 23, 2014; and (ii) a transfer of $361,000 made to FP on December 24, 2014 (the "transfers remaining at issue").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 11, 2021 at Santa Ana, California.

/s/ Misty Perry Isaacson

Misty Perry Isaacson