JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
2338 Manning Avenue
Los Angeles, California 90064
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>            Debtor. | Case No.: 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No.: 8:20-ap-01052-SC |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>            Plaintiff,<br><br>v.<br><br>FOSTER GARVEY PC, as successor-in-interest to FOSTER PEPPER PLLC, a Washington professional corporation,<br><br>            Defendant. | **JOINT PRE-TRIAL STIPULATION**<br><br>**[ORDER TO BE SUBMITTED SEPARATELY]**<br><br>Pretrial hearing date: December 1, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 5C – Virtual Hearing |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Plaintiff Richard Marshack, the trustee ("Trustee") of the chapter 7 bankruptcy estate of

2    Eagan Avenatti LLP, and defendant Foster Garvey, PC ("FG"), as the successor in interest to

3    Foster Pepper, PLLC, hereby submit this Joint Pretrial Stipulation pursuant to Local Bankruptcy

4    Rule 7016-(1)(b)(2):

5    **A.    The following facts are admitted and require no proof:**

6    1.    The law firm of Eagan O'Malley & Avenatti, LLP ("EO&A") was a California

7    based litigation law firm formed in the mid-2000's.

8    2.    The founding partners of the firm were Michael Eagan ("Mr. Eagan"), John

9    O'Malley ("Mr. O'Malley"), and Michael Avenatti ("Avenatti").

10    3.    In 2009, Jason Frank ("Mr. Frank") joined the firm.

11    4.    On December 27, 2010, Mr. O'Malley left and ceased to be a partner in the firm.

12    5.    In January 2011, the firm changed its name to Eagan Avenatti LLP ("Eagan

13    Avenatti" or the "Debtor").

14    6.    In 2011, Avenatti assumed control, directly or indirectly, of Eagan Avenatti, which

15    Avenatti remained in control of until February 13, 2019.

16    7.    On September 4, 2018, a proceeding entitled *In re Eagan Avenatti, LLP*, Case No.

17    8:18-cv-01644-VAP-KES, was commenced in the United States District Court Central District of

18    California.  That case was filed on behalf of Jason Frank Law, PLC ("JFL") to enforce its $10

19    million judgment against Eagan Avenatti entered on May 22, 2018.  On February 13, 2019, JFL,

20    and Avenatti, individually and on behalf of Eagan Avenatti, executed a Stipulation and Order re

21    Appointment of Receiver and Restraining Order.  The Court signed the order creating that

22    receivership on the same day, and Mr. Brian Weiss became the receiver for Eagan Avenatti.

23    8.    On September 13, 2019, Mr. Weiss filed a voluntary chapter 7 bankruptcy petition

24    on behalf of Eagan Avenatti, commencing the Eagan Avenatti bankruptcy case.  At that time,

25    Richard Marshack became the chapter 7 trustee for Eagan Avenatti's assets.

26    9.    On November 2, 2020, the Bankruptcy Court entered an Order Granting Trustee's

27    Motion for Approval of Compromise with Robert Stoll, Jr., and the law firm of Stoll Nussbaum &

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Polakov LLP (the "Stoll Firm").  Bankruptcy Case Docket 235, which allowed the Stoll Firm's

2    claim for the principal debt of $5,465,314.

3        10.    During Eagan Avenatti's first bankruptcy case (filed in 2017), Eagan Avenatti,

4    Avenatti, Mr. Frank and JFL (and others) entered into a settlement agreement. The agreement

5    provided that JFL had an allowed claim of $10 million against Eagan Avenatti, but that the debt

6    could be satisfied by the payment of $4,850,000 within 120 days after the dismissal of Eagan

7    Avenatti's bankruptcy case.  However, neither Eagan Avenatti nor Avenatti ever made any of the

8    payments required under the settlement agreement.  Based on that failure, the Bankruptcy Court

9    entered a $10 million judgment in favor of JFL in May 2018.

10        11.    On March 4, 2020, in this bankruptcy case, the Bankruptcy Court's Order Granting

11    Trustee's Motion to Approve Subordination Agreement with Jason Frank Law, PLC was entered

12    (the approved agreement subordinated JFL's $10 million secured claim to certain administrative

13    claims).  Bankruptcy Case docket 107.

14        12.    Global Baristas, LLC ("Global Baristas") sought to acquire the assets of TC

15    Global, Inc. ("TC Global"), a company then in a chapter 11 reorganization bankruptcy case in the

16    Western District of Washington (*In re TC Global, Inc.,* Case No. 12-20253 (Hon. Karen A.

17    Overstreet Presiding)), which owned the Tully's Coffee ("Tully's") retail coffee business.

18        13.    Global Baristas hired Defendant's predecessor Foster Pepper, PLLC, to represent it

19    in the TC Global bankruptcy case.

20        14.    Prior to the formation of Global Baristas, Avenatti had worked with Foster Pepper

21    as co-counsel for parties in litigation where Foster Pepper had offices, including the State of

22    Washington, where Global Baristas was formed, TC Global filed its bankruptcy case, and Tully's

23    had its principal place of business.

24        15.    On April 14, 2020, the Trustee commenced this litigation against Foster Garvey, as

25    the successor in interest to Foster Pepper, by filing a complaint for avoidance and recovery of

26    alleged voidable transfers.

27

28

16.    Plaintiff's Complaint asserts three claims for "intentional fraudulent transfer" under Cal. Civ. Code § 3439.04(a) (the first, second and fourth claims for relief), and seeks to recover the transferred funds under 11 U.S.C. § 550(a)(1), (a)(2), and § 551 (the fifth claim for relief).

17.    Based on the remaining claims for relief, the Trustee seeks to recover two transfers that Eagan Avenatti made to Foster Garvey's predecessor-in-interest, Foster Pepper (1) $346,109.62 from a transfer of $500,000 on May 23, 2014, and (2) $361,000 on December 24, 2014 (the "Transfers at Issue").

18.    The Transfers at Issue were not made to an insider.

19.    The Debtor did not retain possession or control of the property after the Transfers at Issue.

20.    The Transfers at Issue were not substantially all of the debtor's assets.

21.    The Debtor did not abscond after the Transfers at Issue.

22.    The Debtor did not transfer essential assets of its business to a lienholder who then transferred the assets to an insider of the debtor.

23.    The Debtor's bank records reflect the following transfers to "IRS USATAXPMNT" in 2013-2014:

| Document Number | Date | Amount | Account Number |
| --- | --- | --- | --- |
| 124-17 | 12/05/13 | $18,562.30 | '8461 |
| 124-17 | 12/05/13 | $18,864.85 | '8461 |
| 124-20 | 01/21/14 | $949.87 | '8461 |
| 130-19 | 03/31/14 | $64,286.75 | '8461 |
| 125-23 | 05/28/14 | $80,000 | '8461 |
| 125-23 | 05/28/14 | $136,255.98 | '8461 |
| 122-17 | 06/02/14 | $31,738.89 | '8461 |

24.    The Debtor's bank records reflect the following payments to the EDD in 2013-2014:

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Landau Law LLP
Attorneys at Law
Los Angeles, California

| Document Number | Date | Amount | Account Number |
|---|---|---|---|
| 124-17 | 12/05/13 | $5,452.58 | '8461 |
| 124-17 | 12/05/13 | $5,944.60 | '8461 |
| 130-19 | 03/31/14 | $18,853.26 | '8461 |
| 125-23 | 05/29/14 | $19,219.65 | '8461 |
| 125-23 | 05/29/14 | $25,016.66 | '8461 |
| 122-17 | 06/03/14 | $7,507.57 | '8461 |
| 125-24 | 12/10/14 | $1,000 | '8461 |
| 125-26 | 12/26/14 | $1,000 | '8461 |

**B.     The following issues of fact, and no others, remain to be litigated:**

*The Trustee's statement of issues of fact that remain to be litigated:*

1.     Whether, in late 2012, Avenatti and an individual named Patrick Dempsey ("Mr. Dempsey") formed a company called Global Baristas, LLC ("Global Baristas").

2.     Whether, on May 23, 2014, Eagan Avenatti transferred $500,000 to Foster Pepper, $346,109.62 of which was to pay Foster Pepper for its services relating to Global Baristas acquisition of Tully's.

3.     Whether, on December 24, 2014, Eagan Avenatti transferred an additional $361,000 to Foster Pepper, to pay Foster Pepper for its services relating to Global Baristas acquisition of Tully's.

4.     Whether Avenatti, as the managing partner and majority owner of Eagan Avenatti, controlled the law firm's bank accounts.

5

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.      Whether Mr. Eagan remained a partner in EA until after Eagan Avenatti made the Transfers at Issue.

6.      Whether, as of May 23, 2014, JFL, the Internal Revenue Service (the "IRS"), the Stoll Firm, and Mr. O'Malley were creditors of EA.

7.      Whether, as of December 24, 2014, JFL, the IRS, the Stoll Firm, and Mr. O'Malley were creditors of EA.

8.      Whether Avenatti caused EA to make the Transfers at Issue with the intent to hinder, or delay, or defraud one or more of EA's creditors, including JFL, the IRS, the Stoll Firm, or Mr. O'Malley.

9.      Whether, prior to May 23, 2014, and/or December 24, 2014, Eagan Avenatti acted to hinder, or delay, or defraud the Stoll Firm from recovering money that Eagan Avenatti owed to the Stoll Firm.

10.     Whether, prior to May 23, 2014, and/or December 24, 2014, Eagan Avenatti acted to hinder, or delay, or defraud JFL from recovering money that Eagan Avenatti owed to JFL.

11.     Whether Eagan Avenatti acted to hinder, or delay, or defraud Mr. Bill (as the successor-in-interest to his father, a member of the plaintiff class in *Greco v. NFL*) from recovering money that Eagan Avenatti owed to Mr. Bill (as his father's successor-in-interest).

12.     Whether Eagan Avenatti acted to hinder, or delay, or defraud Eagan Avenatti client Gregory Barela ("Mr. Barela") from recovering money that Eagan Avenatti owed to Mr. Barela.

13.     Whether Eagan Avenatti acted to hinder, or delay, or defraud Eagan Avenatti client Alexis Gardner ("Ms. Gardner") from recovering money that Eagan Avenatti owed to Ms. Gardner.

14.     Whether Eagan Avenatti acted to hinder, or delay, or defraud Eagan Avenatti clients Michelle Phan ("Ms. Phan") or Long Tran ("Mr. Tran") from recovering money that Eagan Avenatti owed to Ms. Phan or Mr. Tran.

15.     Whether Eagan Avenatti acted to hinder, or delay, or defraud Eagan Avenatti client Geoffrey Johnson ("Mr. Johnson") from recovering money that Eagan Avenatti owed to Mr. Johnson.

16.    Whether the Transfers at Issue were made for the benefit of an insider.

17.    Whether the Transfers at Issue were concealed.

18.    Whether Eagan Avenatti had been sued or threatened with suit before it made the Transfers at Issue.

19.    Whether Eagan Avenatti removed or concealed assets.

20.    Whether Eagan Avenatti received reasonably equivalent value in exchange for the Transfers at Issue.

21.    Whether Global Baristas was indebted to Eagan Avenatti both before and after the Transfers at Issue were made.

22.    Whether, when the Transfers at Issue were made, Eagan Avenatti generally was not paying its debts as they become due other than as a result of a bona fide dispute.

23.    Whether the Transfers at Issue occurred shortly before or shortly after a substantial debt was incurred.

24.    Whether, on April 19, 2019, Avenatti was indicted by a federal grand jury on 36 counts for crimes under federal law; whether certain of those counts include allegations that Avenatti, through Eagan Avenatti, embezzled clients' funds; and whether Avenatti is currently awaiting trial on those charges and is presumed innocent of all the charges against him until otherwise determined to be guilty.

25.    Whether, on May 22, 2019, Avenatti was indicted by a federal grand jury on two counts for crimes under federal law arising from his alleged attempt to extort $20 million from Nike, Inc., a sports apparel manufacturer; whether, on February 20, 2020, Avenatti was convicted of both those charges; whether, he subsequently was sentenced to a 30-month prison term; and whether the crimes on which Avenatti was found guilty are crimes of "moral turpitude," generally defined as "a quality of dishonesty or other morality that is determined by a court to be present in the commission of a criminal defense" (https://www.Merriam-Webster.com).

26.    Whether, in a chapter 7 bankruptcy the trustee generally does not operate the debtor's business; whether, instead, the trustee's primary function is to administer the bankruptcy estate's assets for the benefit of its credits; and whether a bankruptcy estate's assets include claims

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   that the debtor, or in some instances its creditors, as a group, have against third parties, which the

2   trustee has the sole right to prosecute.

3        27.   Whether Mr. O'Malley was a Founding Partner in EO&A; and whether, as a

4   Founding Partner, Mr. O'Malley was entitled to share in the partnership's profits, as set forth in

5   the firm Partnership Agreement.

6        28.   Whether, on December 27, 2010, O'Malley signed a Separation Agreement and left

7   the firm.

8        29.   Whether, on July 15, 2011, Mr. O'Malley filed suit against Eagan Avenatti,

9   Avenatti, and Eagan (among others) for breach of the Partnership Agreement and the Separation

10  Agreement (among other claims) in the Orange County Superior Court, Case No. 30-2011-

11  00491511, and moved to compel arbitration (the "O'Malley Litigation"); and whether certain of

12  those defendants filed counterclaims against Mr. O'Malley.

13       30.   Whether, effective August 7, 2015, the parties entered into a General Release and

14  Settlement Agreement, resolving all disputes between them; and whether, in the agreement,

15  Avenatti, his wholly owned entity Avenatti & Associates, and Eagan Avenatti agreed to pay Mr.

16  O'Malley $3 million on or before August 20, 2015.

17       31.   Whether, in 2008, the Stoll Firm, EO&A, and another law firm ("PSB") entered

18  into an agreement to jointly represent two individuals in connection with claims they might have

19  against a corporation ("X Corp.") that had sued them; and whether the attorneys, with the clients'

20  consent, agreed that the contingency fee, if any, earned as the result of a recovery on those claims

21  would be split: 35% to PSB, 35% to the Stoll Firm, and 30% to EO&A.

22       32.   Whether the above litigation was resolved by a Settlement Term Sheet for Mutual

23  Release and Settlement Agreement executed by the parties on May 13, 2011; and whether the

24  parties to the litigation signed a further Settlement Agreement and Mutual Release dated May 17,

25  2011.

26       33.   Whether, on May 22, 2011, Avenatti signed a Request for Dismissal with Prejudice

27  of the above litigation.

28       34.   Whether, on May 28, 2011, the clients represented by PSB, the Stoll Firm and

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Eagan Avenatti, sent a letter to the Stoll Firm terminating their representation by the firm

2  "effective immediately."

3       35.    Whether, on or about May 31, 2011, the entire amount of the settlement payment

4  due from X Corp. was received in an Eagan Avenatti client trust account; whether Avenatti caused

5  Eagan Avenatti to distribute to the clients and PSB the amounts owed to them, and to transfer the

6  remainder of those settlement funds to an Eagan Avenatti operating account; and whether Eagan

7  Avenatti did not pay and never paid to the Stoll Firm any part of the contingency fee owed to it,

8  $5,465,314.

9       36.    Whether, on June 14, 2011, Avenatti caused Eagan Avenatti to sue the Stoll Firm

10  for declaratory relief, asserting that no contingency fee was due the Stoll Firm as co-counsel for

11  their clients in the X-Corp. litigation; and whether the Stoll Firm filed a cross-complaint for

12  breach of contract to recover the $5,465,314 contingency fee owed to it.

13       37.    Whether Mr. Frank is an attorney at law and is the owner and president of JFL, a

14  loan out company though which Mr. Frank practices law.

15       38.    Whether Mr. Frank worked at Eagan Avenatti from February 15, 2009 through

16  May 20, 2016; whether his last contract with EA was entered as of November 1, 2013; whether the

17  contract was an independent contractor agreement between Eagan Avenatti, on the one hand, and

18  JFL and Mr. Frank, on the other hand (the "ICA"); whether, in the ICA, Eagan Avenatti agreed to

19  pay JFL a Profit Share Bonus based upon a formula set forth in the ICA; whether the Profit Share

20  Bonus for 2013 was due on February 15, 2014; and whether additional Profit Share Bonuses for

21  2014 – 2016 were due on February 15 of the year following the year on which the amount due was

22  calculated.

23       39.    Whether, in May 2016, Mr. Frank resigned from Eagan Avenatti.

24       40.    Whether, under the ICA, JFL was also entitled to a percentage of the net attorneys'

25  fees collected by Eagan Avenatti in lawsuits concerning Eden Memorial Park Cemetery, including

26  *Scott et al. v. Service Corporation International, et al.* (the "*Scott* Action"), as an additional

27  portion of JFL's compensation referred to as the "Eden Bonus."

28       41.    Whether, in May 2014, Eagan Avenatti received approximately $23.5 million in

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

attorneys' fees and costs in the *Scott* Action (the "*Scott* Fees"); and whether approximately $3.4 million of the *Scott* Fees were paid via a wire transfer received by Eagan Avenatti on May 23, 2014.

42.    Whether, at all times after Eagan Avenatti's receipt of the *Scott* Fees, JFL was entitled to a share of the *Scott* Fees for the Eden Bonus, and whether the amount of the Eden Bonus was ultimately determined to be $1,891,228.

43.    Whether Eagan Avenatti failed pay JFL any portion of the *Scott* Fees on account of the Eden Bonus, and whether Avenatti falsely led Mr. Frank to believe that the *Scott* Fees were essentially "frozen" to keep JFL from taking action to collect the Eden Bonus until after Eagan Avenatti had dissipated all of the *Scott* Fees.

44.    Whether, in addition to failing to pay the Eden Bonus, Eagan Avenatti failed to pay JFL the 2013 Profit Share Bonus due on February 15, 2014, the 2014 Profit Share Bonus due on February 15, 2015, or the 2015 Profit Share Bonus due on February 15, 2016; and whether, nevertheless, Mr. Frank, based upon representations made to him by Avenatti and the ICA, remained a partner in Eagan Avenatti until 2016.

45.    Whether the ICA required Eagan Avenatti to provide JFL with information regarding Eagan Avenatti's revenue and expenses for 2014 by February 15, 2015; whether Eagan Avenatti breached that obligation; and whether Eagan Avenatti resisted disclosing information regarding its 2014 expenditures even in the arbitration JFL filed against Eagan Avenatti.

46.    Whether, in February 2016, Mr. Frank filed a Demand for Arbitration with JAMS on behalf of JFL against Eagan Avenatti for breach of the ICA; whether Mr. Frank later filed an Amendment to the Demand for Arbitration on or about August 29, 2016; and whether, after extending discovery in which Eagan Avenatti repeatedly failed to cooperate, as part of the Arbitration Panel's Final Order re Claimant's Motion for Sanctions, dated February 10, 2017, the Panel ordered JFL to file Proposed Findings of Fact regarding the amount of the Profit Share Bonuses owed for 2013, 2014, 2015 and 2016 – respectively, $992,036, $6,311,992, $1,823,076, and $4,270,044.

47.    Whether the entry of an arbitration award in JFL's favor was forestalled by an

1  involuntary bankruptcy petition filing against EA on March 1, 2017, in Florida; and whether that

2  bankruptcy case was subsequently transferred to the Central District of California.

3    48. Whether, in Eagan Avenatti's current bankruptcy case, the following proofs of

4  claim ("POCs") have been filed by the firm's former clients: (1) POC no. 30-1, William Parrish in

5  the amount of $0.00  (a plaintiff in the X Corp. litigation) for professional negligence, breach of

6  fiduciary duty, fraud – concealment, conversion, and promissory estoppel; (2) POC no. 31-1,

7  Timothy Fitzgibbons in the amount of $0.00 (a plaintiff in the X Corp. litigation) for professional

8  negligence, breach of fiduciary duty, fraud – concealment, conversion, and promissory estoppel;

9  (3) POC no. 32-1, William Parrish in the amount of $0.00 for a default judgment against Avenatti

10  in the amount of $2,194,301.87; (4) POC no. 33-1, Geoffrey E. Johnson for professional

11  negligence, breach of fiduciary duty, breach of contract, intentional fraud, conversion, and aiding

12  and abetting, for $4 million in settlement proceeds received by Eagan Avenatti for his benefit that

13  Avenatti misappropriated, plus $500,000 in lost Social Security benefits and general damages,

14  bringing the total to $9.5 million; (5) POC no. 35-1, Alexis Gardner for $5,211,959, including $3

15  million in settlement proceeds received by Eagan Avenatti for her benefit that Avenatti

16  misappropriated; (6) POC no. 39-1, Gregory Barela for $610,000 in settlement proceeds that

17  Eagan Avenatti received for his benefit that Avenatti misappropriated; and (7) POC no. 41-1,

18  Dennis Bill for his share of the Greco v. NFL class action settlement proceeds received by Eagan

19  Avenatti for the benefit of the class members that Avenatti misappropriated.

20    49. Whether, also in Eagan Avenatti's current bankruptcy case, the following POCs

21  have been filed by the firm's former co-counsel in cases: (1) POC no. 12, the Stoll Firm for

22  $31,971,424 (including $5,465,314 for contingency legal fees received by Eagan Avenatti for its

23  benefit that Avenatti misappropriated); and (2) POC no. 38, Edward M. Ricci $1,250,000 for

24  contingency legal fees received by Eagan Avenatti for his benefit.

25    50. Whether Avenatti and Mr. Dempsey were the sole managers and owners of Global

26  Baristas in 2013 and 2014.

27    51. Whether, if Foster Pepper is deemed to be a subsequent transferee of any portion of

28  the Transfers at Issue, Foster Pepper took that portion of the Transfers at Issue for value, in good

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    faith, and without knowledge of the voidability of that portion of the Transfers at Issue.

2        52.    Whether Foster Garvey opened a client trust account for the benefit of Global

3    Baristas at a local branch of KeyBank in Seattle, Washington.

4        53.    As the successor-in-interest to Foster Pepper, Foster Garvey is obligated to return

5    to the Trustee all of Eagan Avenatti's transfers of money to Foster Pepper that are determined to

6    be avoidable transfers in this litigation.

7    *Defendant's statement of issues of fact that remain to be litigated*:

8        1.    Whether, on May 23, 2014, Eagan Avenatti transferred $500,000 to Foster Pepper's

9    client trust account, thereafter on June 24, 2014 Avenatti authorized $346,109.62 of that amount to

10   pay Foster Pepper's outstanding invoices.

11       2.    Whether, on December 24, 2014, Eagan Avenatti transferred an additional

12   $361,000 to Foster Pepper, to pay Foster Pepper for its outstanding invoices.

13       3.    Whether, as of November 1, 2013, Mr. Frank was no longer a partner of Eagan

14   Avenatti.

15       4.    Whether there were two or more partners of Eagan Avenatti at the time the

16   Transfers at Issue were made.

17       5.    Whether Avenatti made the Transfers at Issue – i.e., to pay Foster Pepper's legal

18   bills – with the actual intent to hinder, delay or defraud a creditor.

19       6.    Whether the Transfers at Issue were not concealed, and are openly reflected in the

20   Debtor's bank records.

21       7.    Whether Eagan Avenatti was sued or threatened with suit before the Transfers at

22   Issue were made or the payment obligation was incurred.

23       8.    Whether Eagan Avenatti removed or concealed assets at the time of the Transfers at

24   Issue.

25       9.    Whether the value of the consideration received by Eagan Avenatti was reasonably

26   equivalent to the value of the Transfers at Issue.

27       10.    Whether the Debtor was not insolvent and did not become insolvent shortly after

28   the Transfers at Issue were made.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Landau Law LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11.     Whether the Transfers at Issue did not occur shortly before or shortly after a substantial debt was incurred.

12.     Whether the Debtor received over $8 million in deposits from *GB* between February 2013 and August 2018.

13.     Whether the Debtor paid Mr. Frank or JFL over a million dollars in 2013 and 2014.

14.     Whether, on January 3, 2013, Global Baristas prevailed in an auction in the *TC Global* bankruptcy case to purchase the Tully's assets for $9.15MM.

15.     Whether the *TC Global* bankruptcy court confirmed Global Baristas' bid over a competing "hybrid" bid by Starbucks and others that totaled $10,535,000, and found Global Baristas to be a good faith purchaser under 11 U.S.C. § 363(m).

16.     Whether Foster Pepper represented Global Baristas through 18 months of litigation in the *TC Global* bankruptcy case, across almost 800 separate docket entries.

17.     Whether Foster Pepper *also* represented Global Baristas in three separate adversary proceedings arising out of the Tully's asset purchase by Global Baristas, from October 2013 through December 2014: (1) *TC Global, Inc. v. Global Baristas*, W.D.WA. B.C. Adv. Proc. No. 13-01540; (2) *Tully's Coffee Asia Pac. Partners, LP v. Global Baristas LLC and TC Global, Inc.*, W.D.WA. B.C. Adv. Proc. No. 13-01579; and (3) *Global Baristas, LLC v. DK Retail Co. Ltd., et al.*, W.D.WA. B.C. Adv. Proc. No. 13-01585.

18.     Whether Avenatti paid Foster Pepper for legal services it provided, in part, with funds wired to Foster Pepper from Eagan Avenatti's bank accounts.

19.     Whether, on April 14, 2020, the Trustee commenced this litigation against Foster Garvey by filing a complaint for avoidance and recovery of alleged voidable transfers in the amount out $1,813,373.87 for funds Foster Pepper received from Eagan Avenatti between June 25, 2013 and December 24, 2014.

20.     Whether, on November 2, 2020, the Court entered summary judgment against Plaintiff's Third Cause of Action, for constructive fraudulent transfer, regarding a payment made to Foster Pepper on May 23, 2016, in the amount of $42,555.22.  (Doc. 53).

21.     Whether, on September 23, 2021, the Court entered its Order Approving

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Stipulation Resolving Defendant's Motion for Partial Summary Judgment (Doc. 89), which granted summary judgment against the first, second and fourth causes of action to the extent they sought to avoid transfers to Foster Pepper made in June 2013 and the portion of a transfer made to Foster Pepper in May 2014.

22.    Whether, in or sometime after 2011, through February 13, 2018, Mr. Eagan was not actively involved in Eagan Avenatti.

**C.    The following issues of law, and no others, remain to be litigated:**

*Trustee's statement of issues of law that remain to be litigated:*[1]

1.    Whether Foster Pepper gave Eagan Avenatti reasonably equivalent value in exchange for Eagan Avenatti's May 23, 2014 transfer of $346,109.62 to Foster Pepper.

2.    Whether Foster Pepper gave Eagan Avenatti reasonably equivalent value in exchange for Eagan Avenatti's December 24, 2014 transfer of $361,000 to Foster Pepper.

3.    Whether Foster Pepper took Eagan Avenatti's May 23, 2014 transfer to it in good faith.

4.    Whether Foster Pepper took Eagan Avenatti's December 24, 2014 transfer to it in good faith.

*Defendant's statement of issues of law that remain to be litigated:*

1.    Whether the Debtor was a validly existing partnership at the time of the Transfers at Issue, or a sole proprietorship.

2.    Whether the Transfers at Issue were "intentional fraudulent transfers" under California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04(a).

**D.    List of Exhibits**

Attached is a list of exhibits intended to be offered at the trial by the Plaintiff, other than exhibits to be used for impeachment only.  The parties are in the process of exchanging copies of exhibits but have not yet exchanged copies of all exhibits.

---

[1]  To the extent that any of the disputed issues of fact identified by the Trustee and/or the Defendant in Section B above could be considered issues of law, the Trustee and/or the Defendant also identify and incorporate those issues into his/its statement of disputed issues of law.

Landau Law LLP
Attorneys at law
Los Angeles, California

1    *Defendant's Exhibits*:

2        1.    Selected bank statements showing payments to alleged creditors during and after

3    the time of the transfers remaining at issue.

4        2.    The Jason Frank Independent Contractor Agreement.

5        3.    Emails related to Frank's bonus.

6        4.    Pleadings related to the EA/Stoll Nussbaum fee dispute.

7    **E.    Lists of Witnesses**

8        The parties have exchanged a list of witnesses to be called at trial.  Attached is a list of

9    of Plaintiff's witnesses in accordance with LBR 7016-l(b)(2)(E).[2]

10        Defendant anticipates cross-examination of any witness called by Plaintiff.

11    **F.    Other matters that may affect the trial**

12        Other matters that might affect the trial such as anticipated motions in limine, motions to

13    withdraw the reference due to timely jury trial demanded pursuant to LBR 9015-2, or other pretrial

14    motions:

15    *Trustee's anticipated matters that may affect the trial*:

16        The Trustee filed a motion to continue the pretrial conference and all trial related dates set

17    in this Adversary Proceeding to dates after July 12, 2022, that are convenient to the Court.  The

18    motion is set for hearing on December 1, 2021 (at the same time as the pretrial conference).   The

19    motion is based upon District Court's denial of Michael J. Avenatti's motion to dismiss the

20    criminal charges against him on the same basis that the District Court declared a mistrial in United

21    States v. Michael J. Avenatti, SA CR No. SACR19-00061-JVS.  Avenatti has appealed the denial

22    of his motion to dismiss to the Ninth Circuit Court of Appeals, which divests the District Court of

23    jurisdiction over the criminal case.  As a result, at least until the Ninth Circuit rules on the appeal,

24    key witnesses in the criminal trial, who also will be significant witnesses at the trial of this case,

25    _____

26    [2] Those witnesses identified with an '*' on the attached Plaintiff's Trial Witness List, also are prosecution witnesses in
*United States v. Michael J. Avenatti*, SA-CR-19-16-JVS, United States District Court Central district of California,
Santa Ana Division. The prosecutors in that case have informed the Office of the United States Trustee, and the

27    Trustee and his counsel in this bankruptcy case, that any attempt to examine those witnesses prior to conclusion of at

28    least the first phase of the criminal trial, will result in their seeking relief from the district court to stay those
examinations or the bankruptcy case.

1    will remain unavailable to the Trustee (the prosecutors have informed the Office of the United

2    States Trustee and the Trustee and his counsel that any attempt to take the testimony of those

3    witnesses prior to the conclusion of phase 1 of the criminal trial will cause the prosecution to

4    immediately seek relief from the District Court to stay those examinations or the administration of

5    the Eagan Avenatti bankruptcy case).

6        Prior to filing the Trustee's motion, the Trustee's counsel discussed the basis for that

7    motion with Foster Garvey's attorneys and requested that the defendant agree to the relief sought

8    in the motion.  That request was rejected.

9        Foster Garvey has requested a jury trial.

10   _Defendant's anticipated matters that may affect the trial_:

11       The Defendant anticipates motions in limine regarding the inadmissibility of testimony and

12   evidence regarding matters occurring or allegedly occurring after 2014.

13   **G.    Status of Discovery**

14       All discovery is complete.[3]

15   **H.    Trial Readiness**

16       The parties are ready for trial.

17   **I.    Length of Trial**

18   _Plaintiff's estimate_: 1) jury trial, seven days; bench trial, four days.

19   _Defendant's estimate_: Defendant believes the facts relevant to Michael Avenatti's intent in making

20   the transfers remaining at issue can be tried to a jury in four days.  Defendant does not believe that

21   events occurring long after the transfers remaining at issue, or events pertaining to Mr. Avenatti's

22   alleged wrongdoings that are unrelated to the transfers remaining at issue, are relevant to the issue

23   to be determined in this action, and that the obviously prejudicial effect of such matters outweighs

24   any potential relevance, remote as it is.

25   _/ / /_

26

27   _____

[3] Should the Court grant the Trustee's pending motion to continue the pretrial conference, his counsel believes that

28   permitting the parties to depose those witnesses who testified in Avenatti's criminal trial and will be called in the trial
     of this case will preserve judicial resources by shortening those witnesses' testimony at trial.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   **J.      Parties' Admissions**

2          The foregoing admissions have been made by the parties, and the parties have specified the

3   foregoing issues of fact and law remaining to be litigated.  Therefore, this order supersedes the

4   pleadings and governs the course of trial of this cause, unless modified to prevent manifest

5   injustice.

6

7   Dated: November 22, 2021                    LANDAU LAW LLP

8

9

10                                              By____/s/ John P. Reitman_____
                                                     John P. Reitman
11                                              Special Litigation Attorneys for
                                                Plaintiff Richard A. Marshack,
12                                              Chapter 7 Trustee for Eagan Avenatti, LLP

13

14  Dated: November 22, 2021                    PAGTER AND PERRY ISAACSON, APLC

15

16

17                                              By_____
                                                     Misty Perry Isaacson
18                                              Attorneys for Defendant Foster Garvey PC, as
                                                successor-in-interest to Foster Pepper PLLC

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

**PLAINTIFF'S TRIAL EXHIBITS**

| Exhibit No. | Exhibit Description | Defendant's Objection to Admissibility | Date Identified | Date Admitted |
|---|---|---|---|---|
| 1. | FG-EA0000001 INV 5.31.13.pdf | | | |
| 2. | FG-EA00000067 INV 7.24.13.pdf | | | |
| 3. | FG-EA00000088 INV 8.30.13.pdf | | | |
| 4. | FG-EA0000108 INV 10.23.13.pdf | | | |
| 5. | FG-EA0000133 INV 11.22.13.pdf | | | |
| 6. | FG-EA0000150 INV 12.10.13.pdf | | | |
| 7. | FG-EA0000169 INV 1.14.14.pdf | | | |
| 8. | FG-EA0000208 INV 2.13.14.pdf | | | |
| 9. | FG-EA0000186 INV 3.12.14.pdf | | | |
| 10. | FG-EA0000212 INV 4.8.14.pdf | | | |
| 11. | FG-EA0000227 INV 5.30.14.pdf | | | |
| 12. | FG-EA0000248 INV 7.14.14.pdf | | | |

EXHIBIT 1
1

| | | | | |
|---|---|---|---|---|
| **13.** | FG-EA0000260 INV 11.12.14.pdf | | | |
| **14.** | FG-EA0000266 INV 1.14.15.pdf | | | |
| **15.** | Intentionally Blank | | | |
| **16.** | FG-EA0000218.pdf | | | |
| **17.** | FG-EA0000232.pdf | | | |
| **18.** | FG-EA0000241.pdf | | | |
| **19.** | FG-EA0000252.pdf | | | |
| **20.** | FG-EA0000263.pdf | | | |
| **21.** | 1.8.13 GB engagement conflict letter FG-EA0000344.pdf | | | |
| **22.** | 1.16.13 GB engagement letter FG-EA0000339.pdf | | | |
| **23.** | Intentionally Blank | | | |
| **24.** | History: Foster Garvey PC: Law Firm – Attorneys [https://www.foster.com > ourfirm-history] | | | |
| **25.** | Foster Pepper and Garvey Schubert Barer Combine to Create Mission-Driven Firm [https://www.foster.com/ | | | |

EXHIBIT 1
2

| | | | | |
|---|---|---|---|---|
| | > newsroom-news-foster-garvey-merger-announcement-law] | | | |
| **26.** | Foster Garvey Answer to Complaint | | | |
| **27.** | Foster Garvey Response to Requests for Production of Documents (set 1) | | | |
| **28.** | Foster Garvey Response to Requests for Production of Documents (set 2) | | | |
| **29.** | Foster Garvey Response to Interrogatories (set 1) | | | |
| **30.** | Foster Garvey Response to Requests for Admissions (set 1) | | | |
| **31.** | Intentionally Blank | | | |
| **32.** | U.S. v. Avenatti criminal trial transcript – Judy Regnier (to be supplied) | | | |
| **33.** | U.S. v. Avenatti criminal trial transcript – Alexis Gardner (to be supplied) | | | |
| **34.** | U.S. v. Avenatti criminal trial transcript – Filippo Marchino (to be supplied) | | | |
| **35.** | U.S. v. Avenatti criminal trial transcript –Geoffrey Johnson (to be supplied) | | | |
| **36.** | U.S. v. Avenatti criminal trial transcript – Gregory Barela (to be supplied) | | | |
| **37.** | U.S. v. Avenatti criminal trial transcript – Michelle Phan (to be supplied) | | | |

EXHIBIT 1
3

| | | | | |
|---|---|---|---|---|
| **38.** | U.S. v. Avenatti criminal trial transcript – Long Tran (to be supplied) | | | |
| **39.** | Intentionally Omitted | | | |
| **40.** | 161_Statement of Financial Affairs for Ownership of EA | | | |
| **41.** | Amended Schedule B from 1st EA BK Case<br><br>Eagan Avenatti Ownership | | | |
| **42.** | Intentionally Blank | | | |
| **43.** | 41_Proof of Claim – Dennis M. Bill (110920) | | | |
| **44.** | 24_Proof of Claim – Todd D. Baraniak (020420) | | | |
| **45.** | 38_Proof of Claim – Edward M. Ricci, PA | | | |
| **46.** | Intentionally Blank | | | |
| **47.** | 39_Proof of Claim_ Gregory Barela | | | |
| **48.** | 10_Proof of Claim – Dept. of the Treasury | | | |
| **49.** | 31_Proof of Claim – E. Timothy Fitzgibbons | | | |
| **50.** | 14_Proof of Claim – Jason Frank | | | |
| **51.** | 35_Proof of Claim Alexis Gardner (021020) | | | |

EXHIBIT 1
4

| | | | | |
|---|---|---|---|---|
| **52.** | 32_Proof of Claim – William Parrish (021020) | | | |
| **53.** | 12_Proof of Claim – Stoll Nussbaum & Polakov APC | | | |
| **54.** | Intentionally Blank | | | |
| **55.** | Communications, checks, and bank statement re receipt and disbursement of settlement payments relating to plaintiff's witnesses (to be supplied) | | | |
| **56.** | Intentionally Blank | | | |
| **57.** | Peoples Bank documents.pdf | | | |
| **58.** | Intentionally Blank | | | |
| **59.** | 8_Declaration of Patrick Dempsey (081320) Global Baristas | | | |
| **60.** | Dempsey Complaint Global Baristas | | | |
| **61.** | Intentionally Blank | | | |
| **62.** | Attorney Client Fee Contract.pdf Stoll Firm | | | |
| **63.** | FLIR Settlement.pdf Stoll Firm | | | |
| **64.** | Complaint for Declaratory Relief (061411) | | | |

EXHIBIT 1
5

| | | | | |
|---|---|---|---|---|
| | Stoll Firm | | | |
| **65.** | First Amended Cross-Complaint for Breach of Contract; Conversion; and Constructive Trust Stoll Firm | | | |
| **66.** | Second Amended Cross-Complaint for (011619)  Stoll Firm | | | |
| **67.** | Stoll Adversary Complaint with exhibits Stoll Firm (EA BK Case) | | | |
| **68.** | Intentionally Blank | | | |
| **69.** | O'Malley settlement agreement.PDF | | | |
| **70.** | Intentionally Blank | | | |
| **71.** | Karlous Declaration.pdf  Internal Revenue Service | | | |
| **72.** | Intentionally Blank | | | |
| **73.** | Independent Contractor Agreement Jason Frank | | | |
| **74.** | Jason Frank-EA Independent Contractor Agreement | | | |
| **75.** | Jason Frank v. EA Amendment to Demand for Arbitration | | | |
| **76.** | Jason Frank v. EA JAMS Arbitration Final Order re: Claimant Motion for Sanctions | | | |

EXHIBIT 1
6

| | | | | |
|---|---|---|---|---|
| **77.** | Jason Frank v. EA JAMS Arbitration Edit-wire Domestic Transfer | | | |
| **78.** | Jason Frank v. EA JAMS Arbitration EA CB&T Bank Account x8461 statement June 30, 2014 (3 pages) Intentionally Blank | | | |
| **79.** | Jason Frank v. EA JAMS Arbitration EA CB&T Bank Account x8461 statement July 31, 2014 (3 pages) | | | |
| **80.** | Settlement Agreement.pdf Jason Frank | | | |
| **81.** | Judgment in Favor of Jason Frank | | | |
| **82.** | Jason Frank Proof of Claim | | | |
| **83.** | Intentionally Blank | | | |
| **84.** | 2014 0708 Contingency Agreement Gregory Barela | | | |
| **85.** | Additional Barela documents to follow: engagement agreement, settlement agreements, correspondence. | | | |
| **86.** | | | | |
| **87.** | | | | |
| **88.** | | | | |

EXHIBIT 1
7

| | | | | |
|---|---|---|---|---|
| **89.** | | | | |
| **90.** | | | | |
| **91.** | | | | |
| **92.** | | | | |
| **93.** | | | | |
| **94.** | | | | |
| **95.** | Bledsoe (Barela) documents to follow: correspondence | | | |
| **96.** | | | | |
| **97.** | | | | |
| **98.** | | | | |
| **99.** | | | | |
| **100.** | Additional Gardner documents to follow: engagement agreement, settlement agreement, correspondence | | | |
| **101.** | | | | |

EXHIBIT 1
8

| | | | | |
|---|---|---|---|---|
| **102.** | | | | |
| **103.** | | | | |
| **104.** | | | | |
| **105.** | | | | |
| **106.** | | | | |
| **107.** | | | | |
| **108.** | Filippo Marchino (X-Law) documents to follow: bank documents and correspondence | | | |
| **109.** | | | | |
| **110.** | | | | |
| **111.** | | | | |
| **112.** | | | | |
| **113.** | Michelle Phan/Long Tran documents to follow: engagement agreement, settlement agreement, correspondence | | | |
| **114.** | | | | |

EXHIBIT 1
9

| | | | | |
|---|---|---|---|---|
| **115.** | | | | |
| **116.** | | | | |
| **117.** | | | | |
| **118.** | | | | |
| **119.** | | | | |
| **120.** | | | | |
| **121.** | | | | |
| **122.** | | | | |
| **123.** | Additional Geoffrey Johnson documents to follow: engagement agreement, settlement agreement, correspondence, checks | | | |
| **124.** | | | | |
| **125.** | | | | |
| **126.** | | | | |
| **127.** | | | | |

EXHIBIT 1
10

| | | | | |
|---|---|---|---|---|
| **128.** | | | | |
| **129.** | | | | |
| **130.** | | | | |
| **131.** | | | | |
| **132.** | | | | |
| **133.** | | | | |
| **134.** | | | | |
| **135.** | | | | |
| **136.** | | | | |
| **137.** | | | | |
| **138.** | | | | |
| **139.** | | | | |

EXHIBIT 1
11

EXHIBIT 2

## Richard J. Marshack, Trustee v. Foster Garvey Trial Witness List

*Plaintiff's Trial Witness List:*[1]

**Brian Weiss**, 5271 California Ave Suite 270, Irvine, CA 92617 or **Tod McDonald**, 111 S Jackson St., Seattle, WA 98104.  The witness will testify about Eagan Avenatti's business records and creditors, and diversion of money owed to the firm's clients and co-counsel, and Avenatti's conduct to hinder, delay, or defraud the firm's creditors from obtaining payment of money owed to them. Mr. McDonald also may testify about matters related to Global Baristas LLC's business and financial condition at relevant times.

**Robert J. Stoll, Jr.,** 11601 Wilshire Blvd, Los Angeles, CA 90025.  Mr. Stoll will testify about Avenatti's misappropriation of money held by Eagan Avenatti for the benefit of Mr. Stoll's law firm (Stoll Nussbaum & Polakov ("Stoll Firm") and Avenatti's conduct to hinder, delay, or defraud the Stoll firm from obtaining payment of that money from Eagan Avenatti.

**James Keathley**, 2030 Main St Ste 210, Irvine, CA 92614. Mr. Keathley will testify about his interactions with Avenatti in connection with the Stoll Firm and Avenatti's conduct to hinder, delay, or defraud the Stoll firm from obtaining payment of that money from Eagan Avenatti.

**Timothy Fitzgibbons**, [address to be supplied].  Mr. Fitzgibbons was represented by Eagan Avenatti and the Stoll Firm.  He will testify about Avenatti's misrepresentations to him to hinder, delay, or defraud him and Eagan Avenatti's creditors from obtaining payment of money held by the firm for his benefit.

**William Parrish**, [address to be supplied].  Mr. Parrish was represented by Eagan Avenatti and the Stoll Firm.  He will testify about Avenatti's misrepresentations to him to hinder, delay, or defraud him and Eagan Avenatti's creditors from obtaining payment of money held by the firm for his benefit.

**John C. O'Malley**, 4100 Newport Place, Suite 800, Newport Beach, CA 92660.  Mr. O'Malley will testify about Avenatti's conduct to hinder, delay, or defraud him from obtaining payment of the money owed to him by Eagan Avenatti in his capacity as a former partner of the firm.

**Remoun Karlous***, [address to be supplied], former special agent, Internal Revenue Service Criminal Investigation division.  Mr. Karlous will testify about Avenatti's conduct to hinder, delay, or defraud the IRS and Avenatti's, Global Barista, LLC's and Eagan Avenatti's other creditors.

**Jason M. Frank**, 19800 MacArthur Boulevard, Suite 855, Irvine, CA 92612.  Mr. Frank will testify about his unpaid claim against Eagan Avenatti and Avenatti's conduct to hinder, delay, or defraud the firm's creditors from obtaining payment of money owed to them.

**Gregory Barela***, [address to be supplied].  Mr. Barela will testify about Avenatti's misrepresentations to him to hinder, delay, or defraud him from obtaining payment of money held by Eagan Avenatti for his benefit.

---

[1] Witness names followed by a '*', also are prosecution witnesses in *United States v. Michael J. Avenatti*, SA-CR-19-16-JVS, United States District Court Central district of California, Santa Ana Division. The prosecutors in that case have informed the Office of the United States Trustee, and the Trustee and his counsel in this bankruptcy case, that any attempt to examine those witnesses prior to conclusion of at least the first phase of the criminal trial, will result in their seeking relief from the district court to stay those examinations or the bankruptcy case.

**Steven Bledsoe**, 555 Flower St #4400, Los Angeles, CA 90071.  Mr. Bledsoe will testify about Avenatti's misrepresentations to him and his client, Gregory Bledsoe, to hinder, delay, or defraud Mr. Bledsoe from obtaining payment of money held by Eagan Avenatti for his benefit.

**Michelle Phan* or Long Tran***, [addresses to be supplied].  Witness will testify about Avenatti's misrepresentations to her/him to hinder, delay, or defraud her from obtaining payment of money held by Eagan Avenatti for her/his benefit.

**Alexis Gardner***, [address to be supplied].  Ms. Gardner will testify about Avenatti's misrepresentations to her to hinder, delay, or defraud her from obtaining payment of money held by Eagan Avenatti for her benefit.

**Filippo Marchino***, 625 Fair Oaks Ave, Ste 390, South Pasadena, CA 91030.  Mr. Marchino will testify about unpaid claims against Eagan Avenatti and Avenatti's conduct to hinder, delay, or defraud the firm's creditors from obtaining payment of money owed to them and the misappropriation of money held by the firm for the benefit of a client.

**Geoffrey Johnson***, [address to be supplied].  Mr. Johnson will testify about Avenatti's misrepresentations to him to hinder, delay, or defraud him from obtaining payment of money held by Eagan Avenatti for his benefit.

**Judy K. Regnier***, 4491 Rainbow, Yorba Linda, CA 92886.  Ms. Regnier will testify about Eagan Avenatti's financial condition, unpaid claim against Eagan Avenatti and Avenatti's conduct to hinder, delay, or defraud the firm's creditors from obtaining payment of money owed to them and Avenatti's misappropriation of money held by the firm for the benefit of its clients.

_Defendant's Trial Witness List_:

EXHIBIT 2
13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 2338 Manning Ave., Los Angeles, CA 90064.**

A true and correct copy of the foregoing document entitled (*specify*): ***Joint Pre-Trial Stipulation*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 22, 2021,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steven Casselberry    s.casselberry@mpglaw.com, j.jacobs@mpglaw.com**
- **Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com**
- **Misty A Perry Isaacson    misty@ppilawyers.com, ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com**
- **Jack A. Reitman    jareitman@landaufirm.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com**
- **John P. Reitman    jreitman@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com**
- **Monica Rieder    mrieder@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)**,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)**_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 22, 2021 | Hannah Richmond | /s/ Hannah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**